271 So.2d 598 (1972)
Doyle R. MALONE
v.
Dickie Lee Parris MALONE.
No. 9128.
Court of Appeal of Louisiana, First Circuit.
December 26, 1972.
*599 Andrew J. Bennett, Jr., Baton Rouge, for appellant.
J. Randolph Smith and J. Carl Parkerson, Monroe, for appellee.
Before LOTTINGER, ELLIS and CUTRER, JJ.
CUTRER, Judge.
Plaintiff, Doyle R. Malone, appeals from the trial court judgment which awarded permanent cause and custody of his eight and one-half year old son, Barry Todd Malone, to the child's mother, Dickie Lee Parris Malone, the defendant. The judgment also decreed a final divorce between the plaintiff and the defendant, but this portion of the judgment is uncontested. We affirm.
Plaintiff-appellant and the defendant-appellee were married on November 24, 1960 in Monroe, Louisiana. They later established their matrimonial domicile in Baton Rouge, Louisiana in 1964. One child, Barry Todd Malone, was born of this marriage on October 20, 1963. Plaintiff was granted a legal separation by judgment of the Family Court, East Baton Rouge Parish, on May 21, 1969, which judgment granted the defendant the permanent care and custody of the minor child, subject to the plaintiff's right of visitation, and condemned plaintiff to pay the sum of $75.00 per month child support.
In February of 1969 the defendant left Baton Rouge and established her domicile in Monroe, Louisiana where she and the minor child were residing at the time of trial. On June 4, 1970 the plaintiff commenced this action for a final divorce on the ground that he and the defendant had lived separate and apart for more than one year, and sought to obtain custody of his minor son on the grounds that the defendant is an unfit mother alleging several specific acts of sexual misconduct.
The most serious of these alleged acts of sexual misconduct supposedly occurred in late August of 1969, and was sought to be proved through the testimony of the minor child, Todd Malone, who was five years old at the time of this incident. According to Todd's testimony he awoke in the middle of the night and went to get into his mother's bed where, in the dark, he crawled over a "Mr. George" who was at the time in the bed with his mother. The defendant attempted to explain the incident by saying that she, Mr. George and Todd had spent a strenuous day boating, returned home late, and that Mr. George had fallen asleep on her bed in his bathing trunks while awaiting a telephone call, the telephone being located in her bedroom. Todd testified that Mr. George did have on swimming trunks. The plaintiff also introduced the testimony of two amateur detectives that on four consecutive Saturday nights in January and February of 1970 the defendant entertained a Mr. Barfoot in her apartment till 1:30 A.M., and on each of these occasions the lights were off from at least 12:00 midnight to 1:30 A.M.
While we readily concede that the defendant has, at best, been guilty of serious acts of indiscretion, we do not find that the trial court erred in its judgment.
*600 The law, as it relates to custody, has developed several well settled rules or principles that are to be applied in arriving at a decision in these matters.
First, the paramount question to be considered and answered in determining to whom custody should be granted is what would serve the greatest advantage, best interest and welfare of the child. Moosa v. Abdalla, 248 La. 344, 178 So.2d 273 (1965); Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960).
It is equally well established that it is in the best interest of the child to grant custody to the mother, especially when he is of tender years. Such a paramount right of the mother to have custody should not be denied unless she is morally unfit or otherwise unsuitable, and it is only in exceptional cases that the better interest of the child is served by changing its custody from the mother to the father. Nugent v. Nugent, 232 So.2d 521 (La.App. 3rd Cir.1970); Tullier v. Tullier, 140 So.2d 916 (La.App. 4th Cir.1962); Gentry v. Gentry, 136 So.2d 418 (La.App. 1st Cir. 1961).
Our jurisprudence is also well settled that the determination of the trial judge in child custody matters is entitled to great weight. He is in a better position to evaluate the best interests of the child from his total overview of the conduct, character of the parties and the child and of community standards. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof. Nugent v. Nugent, 232 So.2d 521, (La.App. 3rd Cir.1970); Bush v. Bush, 144 So.2d 119 (La.App. 4th Cir.1962); Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960).
Our courts have adopted the rule that the party seeking to change custody bears the heavy burden of proving that the continuation of the present custody is detrimental to the child so as to justify removing it from the environment to which it is accustomed. Tiffee v. Tiffee, 254 La. 381, 223 So.2d 840 (1969); Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955).
Counsel for the defendant points out, and the point is well taken, that there has been no allegation of impropriety by Mrs. Malone after February 15, 1970, over three months before this suit was filed and some five and a half months before this suit was tried. The trial judge did not assign written reasons for judgment, but he did remark at the conclusion of the trial as he was instructing the attorneys on trial briefs that he was particularly interested in the point of remoteness. Counsel contends that the present case falls squarely within the holding of our Supreme Court in Fulco v. Fulco, 245 So.2d 461 (La.App. 2d Cir. 1971), reversed at 259 La. 1122, 254 So.2d 603 (1971). We agree.
In the Fulco case, supra, both the trial court and the appellate court found that the evidence strongly supported the fact that Mrs. Fulco had indeed committed adultery on at least three occasions with a married man. After suit was filed by Mr. Fulco to obtain custody, Mrs. Fulco moved from her apartment into the home of her mother. The trial court found that although Mrs. Fulco was guilty of conduct such as to justify a change of custody at the time of the probable adultery he would allow her to retain custody on the ground that in moving in with her mother her life would be different and the environment would be better for the children. There was no evidence of immoral conduct after Mrs. Fulco moved in with her mother, although she admitted that she was continuing to see the married man. There was evidence that they intended to be married after their divorces were final. The court of appeal reversed but the Supreme Court reinstated the decision of the trial court. After a review of the legal principles set out in this opinion above, that court went on to hold that
"When we apply these accepted principles which govern custody proceedings *601 and the review thereof, we are unable to hold that the trial judge erred in continuing custody in the mother, subject to her continued reformation from any previous course of open indiscretion and probable immorality. These young children have been with their mother since they were born. There is no showing that the mother was not providing a good and moral home for them at the time of custody hearing below, (emphasis ours) nor that any conduct on her part is having any adverse effect upon their welfare. The purpose of a custody determination is not to punish a parent for any past misconduct, it is rather to serve the best interest of the children of the marriage."
We find the holding of the Fulco case, supra, clearly applicable to the case at bar, in fact, this case presents a stronger factual situation for the maintenance of custody in the mother than did the factual situation in Fulco. In this case no acts of impropriety have been alleged for some three months before suit was first filed and some five and a half months before the case was presented to the trial court. In Fulco the wife did not begin her reformation until after suit was filed. As in Fulco, this child has been with its mother since it was born, and there has been no showing that Mrs. Malone was not providing a good and moral home for him at the time of the custody hearing, or that any conduct on her part is having any adverse effect upon his welfare. We also find that is appears that Mrs. Fulco's conduct was more reprehensible than the defendant's herein.
The plaintiff argues that under this ruling all a parent custodian has to do to retain custody, after a rule to change custody has been filed, is to suspend their adulterous conduct until after the rule has been heard. While there is merit to this contention, it must be pointed out that if the custodian should resume his or her immoral conduct, the opposing parent can file a new suit to have custody changed. Should Mrs. Malone resume her former conduct this Court would not consider allowing her to retain custody.
For the reasons assigned the judgment of the trial court is hereby affirmed.
The costs of this appeal are assessed against the plaintiff-appellant.
Affirmed.