345 So.2d 103 (1977)
Janet GAUTREAUX
v.
Edward Thomas ALLEN.
No. 11176.
Court of Appeal of Louisiana, First Circuit.
March 21, 1977.
*104 Ronald L. Menville, Houma, for plaintiff-appellee.
Joe H. Dixon, Jr. and Bernard E. Boudreaux, Jr., Bauer, Darnall, McNulty & Boudreaux, Franklin, for defendant-appellant.
Before LANDRY, EDWARDS and COLE, JJ.
COLE, Judge.
This suit arises from a habeas corpus proceeding brought by the mother of a child against the child's biological father. The district court granted custody of the child to the mother. The father appeals.
Plaintiff-appellee, Janet Gautreaux, was married to Jimmy Wade Lucas on February 20, 1965. In late 1968 or early 1969, the plaintiff physically separated from Lucas. Shortly thereafter she began living with Edward Thomas Allen, the defendant-appellant.
On October 9, 1972, while living with the defendant, but still married to Lucas, the plaintiff gave birth to the child who is the subject of this custody contest. There is no dispute that the defendant is the biological father of the child.
In April, 1974, the plaintiff ceased living with the defendant. On March 11, 1976, she obtained a divorce from Lucas in order to marry her present husband, Reuben Gautreaux, whom she married on March 20, 1976. The plaintiff's writ of habeas corpus was filed on March 31, 1976, at which time the child in question was in the custody of the defendant.
When the plaintiff left the defendant's domicile in April, 1974, she took the child of the relationship with her and retained physical custody of the child until October 9, 1974. There is a dispute between the parties as to who had custody of the child from this date until the time of trial on April 21, 1976, and as to the manner by which the custody of the child was transferred between the parties.
Apparently, on October 9, 1974, the child's birthday, the defendant went to Cameron where the plaintiff was living with her parents to see the child. On that day, the plaintiff was going to Houma, the defendant's domicile, to look for a job. The *105 plaintiff agreed to allow the defendant to keep the child for the day, at the end of which she would pick him up. However, on the night of October 9, 1974, when the plaintiff went to pick the child up, an altercation arose between the plaintiff and a female companion of the defendant. As a result, the plaintiff was convicted of simple battery and placed on probation for one year. In any event, the defendant obtained the physical custody of the child on this occasion.
Plaintiff did not visit the child after October 9, 1974, except on four or five occasions in March, 1975, when she kept the child for a few days at a time with the defendant's permission. She did not see the child between March and November, 1975. Beginning in November, 1975, she again began to keep him for a few days at a time at regular intervals. The defendant refused to allow her to see the child from January, 1976, until the date of the trial.
The plaintiff contends that she never voluntarily agreed to allow the defendant to keep the child. She claims that the infrequent visits were a result of the defendant's refusal to allow her to see the child. Immediately following the altercation resulting in her probation, the plaintiff claims the defendant threatened to have her put in jail if she tried to take the child from his control.
The defendant, on the other hand, claims that the plaintiff voluntarily surrendered the child to his control, because she wanted to work offshore. He also claims that she was free to visit the child any time during this period.
The defendant urges that the trial court erred in awarding the custody of the child to the mother based on the conclusion that since the husband of the mother is presumed to be the father of the child, the biological father has no legal claim to custody.
Without basing its decision on the question of the legal paternity of the child, the trial court in its written reasons discussed several Louisiana cases involving questions of paternity. This discussion evidently was in response to the contention by the plaintiff that, because the defendant had not rebutted the presumption that the husband of the mother is the father, he had no standing as the biological father to claim custody of the child.
While the issue of paternity may have an effect upon the application of the rule that parents have the paramount right to custody, in a habeas corpus proceeding for custody of a child, it has no effect on the right of the party to claim custody. District courts have authority in habeas corpus proceedings to determine who is entitled to legal, as well as physical custody. Wood v. Beard, 290 So.2d 675 (La.1974); Cawthorne v. Williams, 313 So.2d 915 (La. App. 2nd Cir. 1975) (habeas corpus proceeding for custody brought by natural father against natural mother; custody award to natural paternal grandparents); Borras v. Falgoust, 285 So.2d 583 (La.App. 4th Cir. 1973) (unsuccessful habeas corpus filed by mother against foster parents); Robertson v. Robertson, 243 So.2d 847 (La.App. 2nd Cir. 1971) (custody awarded to aunt).
We agree with the statement by this Court in State ex rel. Stokes v. Stokes, 222 So.2d 573 (La.App. 1st Cir. 1969):
"* * * We find no prohibition, statutory or jurisprudential, that would prevent a person other than a parent from seeking legal custody of a child. * * * (222 So.2d at 577)
It is clear that the trial court did not base the award of custody on the issue of the child's paternity. In its written reasons, wherein it disposes of defendant's contention that plaintiff is unfit to be awarded custody, it is apparent that the basis of the decision was a determination that the best interests of the child would be served by awarding custody to the mother. We quote:
"The child in these proceedings is less than four years old. Because the child is still of tender age and there has been a change in circumstances in the mother, the best interest of the child would be served by awarding custody to the plaintiff."
*106 In cases involving custody of children, the paramount consideration in determining to whom custody should be granted is the welfare and best interest of the children. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971); Howard v. Howard, 339 So.2d 1275 (La.App. 1st Cir. 1976); Meyers v. Meyers, 324 So.2d 562 (La.App. 1st Cir. 1975); Whatley v. Whatley, 312 So.2d 149 (La.App. 1st Cir. 1975); Gulino v. Gulino, 303 So.2d 299 (La.App. 1st Cir. 1974); Lambert v. Lambert, 286 So.2d 390 (La.App. 1st Cir. 1973).
The general rule is that the best interest of the children, especially very young children, will be served by granting custody to the mother, unless she is shown to be morally or otherwise unsuitable to have custody. Fulco v. Fulco, supra; Howard v. Howard, supra; Meyers v. Meyers, supra; Gulino v. Gulino, supra; Nugent v. Nugent, 232 So.2d 521 (La.App. 3rd Cir. 1970).
The determination of the trial judge in custody cases is entitled to great weight. His exercise of discretion will not be disturbed on review, except upon a clear showing of an abuse of the discretion granted him. Fulco v. Fulco, supra; Howard v. Howard, supra; Nugent v. Nugent, supra.
The defendant contends that the best interest of the child would be served by awarding him custody, because the mother is morally or otherwise unsuitable. Defendant points to various prior acts of alleged misconduct as evidence of plaintiff's present unsuitability to have custody. For example, he cites the incident of October 9, 1974. Further, he alleges that the plaintiff voluntarily abandoned the care and custody of two other children of her marriage to Lucas. However, the record indicates that these children were removed from her home at a tender age without her knowledge or consent, and she was unable to ascertain their location for approximately six years. When she finally located the children, they had been placed in a foster home. They did not recognize the plaintiff as their mother, and they seemed to be well cared for and well adjusted. Accordingly, she decided that it would be in their best interest to remain in the foster home.
As stated by the trial court, custody is not to be determined in order to punish a parent for past misconduct. Johnson v. Johnson, 331 So.2d 854 (La.App. 1st Cir. 1976). However, past misconduct may form an important consideration in determining present suitability. Borras v. Falgoust, supra.
In the instant case the trial judge determined that the plaintiff had undergone a change in circumstances and that she was presently fit to be awarded custody. As noted by the trial court, "She has remarried and her present husband is both willing and able to provide a good home for the child." Moreover, the child in question is of tender age and his best interest would be served by a custody award to the plaintiff in accordance with the law prevailing in this state.
For the foregoing reasons, we find that the trial court did not abuse its discretion in awarding the custody of the child to the mother. Therefore, the judgment of the trial court is affirmed, at the appellant's costs.
AFFIRMED.