McClendon, j.
| ¡¡Plaintiff, Gary Wayne Sanders, appeals from a custody judgment awarding split domiciliary status to the parents of two siblings. The order provided that an older child would live with Mr. Sanders and the younger child would live with defendant, Connie Moore Sanders. Finding that the trial court failed to articulate sufficient reasons for the separation of the siblings, and that the record before us does not reasonably support such a separation, we reverse in part and remand.
The Sanderses were divorced by an Alabama judgment rendered on November 27, 1996. The Alabama court noted that the parties had agreed to all the terms of the judgment, which included a joint custody arrangement for a daughter, Marina, born in 1993. The parents were to alternate domiciliary status of Marina from year to year.
Although divorced, the parties engaged in a sporadic relationship. Subsequently, both parties moved to Louisiana. In December of 2002, a son, Nicholas, was born to Mr. Sanders and Ms. Sanders.
On July 17, 2003, Mr. Sanders filed suit in Louisiana to have the Alabama judgment of divorce recognized and to have Mr. Sanders named as the domiciliary parent for both children. On July 21, 2003, the Louisiana trial court signed an order recognizing the Alabama divorce and setting the custody issue for a hearing. Ms. Sanders reconvened and asked for sole custody of both children.
After a custody hearing on January 6, 2004, the trial court signed a judgment entitled “INTERIM CUSTODY DECREE” on January 12, 2004. The interim judgment contained the following language: “This order is interim in nature and will be reviewed upon receipt of the mental health evaluation” and a report by CASA on the cleanliness of the mother’s house. The interim decree maintained the joint custody of Marina in both parents and designated Mr. Sanders as the domiciliary parent for Marina. For Nicholas, *723 the trial court awarded both parents joint custody, and designated Ms. Sanders as the domiciliary parent.
IsAlmost a year later, on January 4, 2005, a second hearing was held. At the second hearing, the' trial court acknowledged that CASA was not the appropriate agency to inspect the mother’s home, but accepted the mental health evaluation rendered by the two court appointed psychologists, Dr. Mary Lou Kelley and Dr. Owen Scott. Dr. Kelley testified at the hearing concerning the procedures followed and the conclusions drawn. The report contained the following specific recommendation:
Given that the children should live together, that the children primarily must live in one home given the distance between homes, and Marina’s greater attachment to her father, , we recommend that both Marina and Nicholas primarily live with their father and step-mother. However, this recommendation is made only under the circumstances that Mr. Sanders actively facilitate the children’s relationship with their mother and her involvement in the children’s daily activities.
On January 13, 2005, the trial court signed a “FINAL CUSTODY DECREE.” Despite expert recommendations, the trial court continued the split physical custody, with Mr. Sanders as the domiciliary parent for Marina and Ms. Sanders as the domiciliary parent for Nicholas. In the trial court’s oral reasons for judgment, he stated that the 2004 interim judgment, regardless of its language, was a final considered judgment of custody. After applying the burden of proof rule set forth in Bergeron v. Bergeron, 492 So.2d 1193 (La.1986), the trial court found that the split custody ordered in 2004 was not so deleterious that a change in custody was required in 2005. However, the trial court further found that the 2004 and 2005 judgments were both in the best interest of the children.
In Mr. Sanders’ appeal, he asserts that the'trial court (1) incorrectly treated the interim decree as a considered final custody judgment, subject to the protection of the high standard for change set forth in Bergeron-, (2) failed to apply the appropriate best interest test of LSA-C.C. art. 134; and (3) erred in designating Ms. Sanders as the domiciliary parent of Nicholas, thereby separating |4fuIl-blooded siblings.[1] The essence of Mr. Sanders’ argument is that the trial court erred by granting Ms. Sanders domiciliary parent , status for Nicholas.
STANDARD OF REVIEW
The threshold issue is whether the 2004- “interim” decree qualified as a considered decree- of permanent custody, which would require application of the Ber-geron proof rule before a change could be made. Mr. Sanders argues that the 2004 decree was a temporary decree and not a considered final, custody judgment. Thus, the trial court erred by. employing the Bergeron rule.
In Bergeron, the Louisiana Supreme Court recognized the general statutory rule that custody decisions are based on the best interests of the child. See LSA-C.C. arts. 131 & 134. However, the supreme court also reiterated special jurisprudential rules, including the change of circumstances prerequisite and the following burden of proof rule:
When a trial court has made a considered decree of permanent custody [,] the *724 party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child, (Emphasis added.)
Bergeron, 492 So.2d at 1200 & 1202.
The Bergeron requisites at issue are applicable only to cases where a party has asked for a change or modification of a prior considered judgment. Mr. Sanders’ 2003 petition asked for recognition and modification of a prior consent judgment, and was the first request to have Nicholas’s custody decided. The specific language of the 2004 “INTERIM CUSTODY DECREE” clearly shows that the trial court, by its own motion, conditioned its custody decision on its future review of the mental health evaluation and the CASA report. The second hearing was triggered by the filing of the court ordered mental health evaluation, and the only evidence and testimony adduced at the second hearing concerned the evaluation. No intervening motion for change was filed by either party between Rthe 2004 and 2005 decisions. Thus, under the facts herein, especially in light of the oral reasons assigned by the trial court at the end of the first hearing, the language of the 2004 decree, and the absence of a post-2004 decree motion for change, it was reasonable for both parties to believe that the second hearing was merely a continuation, whose only purpose was the submission of the additional evidence mandated by the court. This conclusion is further substantiated by the failure of the parties to appeal the 2004 split physical custody decision until after the 2005 judgment.
Based on these facts, we find that the 2004 interim decree was a provisional or temporary order issued before the full evi-dentiary hearing was complete. See generally Jordan v. Jordan, 294 So.2d 261, 264-65 (La.App. 1 Cir.), writ denied, 296 So.2d 835 (La.1974). As such, the Berger-on heightened burden of proof was not applicable to the question of Nicholas’ custody in 2004 or 2005. However, we need not conduct a de novo review. Admittedly, the trial court also found both of its rulings were in the children’s best interest. See LSA-C.C. arts. 131 & 134.
SEPARATION OF SIBLINGS
Sibling solidarity offers children some continuity during the separation and divorce of their parents. Generally, “the welfare of children is best served by leaving them together, so they can have the full benefit of companionship and affection.” Howze v. Howze, 99-0852, p. 3 (La.5/26/99), 735 So.2d 619, 621; Tiffee v. Tiffee, 254 La. 381, 223 So.2d 840, 843 (1969); Richardson v. Richardson, 01-0777, p. 14 (La.App. 1 Cir. 9/28/01), 802 So.2d 726, 734, writ denied, 01-2884 (La.11/16/01), 802 So.2d 618. Where feasible, a court should strive to shape custody orders to maintain family connections by keeping siblings in the same home. Id. On appeal, the trial court’s custodial determinations will not be overturned absent abuse of discretion. Shaffer v. Shaffer, 00-1251, p. 5 (La.App. 1 Cir. 9/13/00), 808 So.2d 354, 358, writ denied, 00-2838 (La.11/13/00), 774 So.2d 151.
| ^Although the siblings here are approximately 9 years apart, the record shows Marina to be a nurturing sister. At the first hearing, Marina’s fifth grade teacher testified that Marina was concerned about dirty dishes and moldy food in Ms. Sanders’ home and worried that “Nicholas might get ... that food and get sick.” *725 The statement was further supported by pictures taken at Ms. Sanders’ house. A social worker, who was counseling Marina at the time of the first hearing, stated that Marina preferred the time spent with her father and was not always comfortable with her mother. The social worker opined that Marina would be best served by spending more time with her father. Testimony at the first hearing also showed that Mr. Sanders’ employment did not involve the type of nighttime shift work sometimes required of Ms. Sanders.
In response, Ms. Sanders testified that she had recently cleaned up the house. And further, she believed that Mr. Sanders dressed Nicholas in clothes that were too small and that he did not change Nicholas’ diapers regularly.
Throughout the hearing, Mr. Sanders and Ms. Sanders contradicted each other in their testimony on most issues. Each blamed the other for their relationship problems and the problems with the children.
In its oral reasons for the interim decree, the trial court expressed its disapproval of the parents’ problems with each other and of their intimate relationships with other people outside of marriage. However, the trial court did not provide specific facts underlying its decision to separate the physical custody of the siblings, or explain how the separation would be in the best interest of the children. No reference was made to the expert testimony of the social worker or to the preference for keeping siblings together.
By the time of the second hearing, the father had remarried. The mental health evaluation submitted at the second hearing discussed the personal problems of both parents, including the problems between Marina and her mother, the father’s exacerbation of that rift through comments made to Marina, and the animosity between the parents. However, the evaluation concluded that the children would be best served by remaining together in their father’s home, |7subject to liberal visitation for the mother. Again, the trial court’s oral reasons for the 2005 judgment provided no specific insight into its decision to separate the children.
As in Howze, the trial court in this case failed to offer a valid basis for the separation of these siblings. See Howze, 99-0852 at p. 3, 735 So.2d at 621. After a thorough review, and application of the long standing principle in Louisiana law to maintain solidarity of siblings, we conclude that the record before us does not sufficiently support separation of these children. No evidence was presented to establish a strong need for a separation of this brother and sister. Rather, the record supports a finding that the children are best served by remaining together and that Mr. Sanders should be designated as the domiciliary parent for both.[2] See Howze, 99-0852 at p. 3, 735 So.2d at 621. Although keeping siblings together required one domiciliary parent to be chosen, the parties still enjoy joint custody. Hopefully, these parents will put the best interest of their children first and support active involvement by both parents in their children’s lives.
For these reasons, we find that the trial court abused its discretion and we reverse the trial court’s separation of the siblings. We designate Mr. Sanders as the domiciliary parent for both children, and remand for a hearing to determine the particulars of the liberal visitation to be granted to Ms. Sanders. Subject to the changes necessitated by our ruling, the remainder of the judgment is affirmed. The costs of the *726 appeal are assessed equally to Mr. Sanders and Ms. Sanders.
REVERSED IN PART, AFFIRMED IN PART, RENDERED AND REMANDED.

. The reversal of the court ordered separation of the children makes it unnecessary for this court to address Mr. Sanders other argu-merits. Ms. Sanders' appeal was dismissed on procedural grounds.

. Even assuming the Bergeron standard was applicable, the result would be the same.